IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| DEBORAH MCGRUDER, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 11-cv-02310-AW |
| | * | |
| EPILEPSY FOUNDATION OF AMERICA, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum Opinion**

Currently before the Court is Defendant Epilepsy Foundation of America, Inc.'s Motion to Dismiss Plaintiff's Complaint, Doc. No. 5, and Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Doc. No. 10. The Court has reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See* Loc. R. 105(6) (D. Md. 2010). For the reasons articulated below, the Court will grant Defendant's Motion to Dismiss Plaintiff's amended Complaint and deny Defendant's Motion to Dismiss Plaintiff's original Complaint as moot.

I.  **Factual & Procedural Background**

The following facts are taken from the amended Complaint unless otherwise noted and are viewed in a light most favorable to Plaintiff. Plaintiff, an African-American woman, was employed by Defendant as a Senior Project Director from October 1, 2009 until August 3, 2011, when she was terminated. Am. Compl. ¶¶ 10, 11. Plaintiff's work duties consisted of managing a team of employees in administering epileptic healthcare projects and programs. *Id.* ¶ 11. Plaintiff reported to Deborah Carr ("Carr"), who was at that time Vice President. *Id.* ¶ 15. Carr in turn reported to Sandy Finucane ("Finucane"), who was Executive Vice President. *Id.*

Regarding Plaintiff's performance, there is no contention that Plaintiff had any performance issues or was otherwise performing her work in an unsatisfactory manner prior to the events that form the basis of this suit.

In January or February 2011, an employee named Elizabeth Musick was hired to work as an administrative assistant for Plaintiff's department. *Id.* ¶¶ 19, 20. Musick is a Caucasian woman who has epilepsy. *Id.* ¶ 20. Shortly after Musick was hired, Plaintiff was approached by three individuals who told Plaintiff about racially discriminatory remarks made by Musick. On February 11, 2011, Musick sent a letter to Finucane, Plaintiff's second-level supervisor, stating that "Based on the conversations I hear almost daily in my immediate area, I could be working at the NAACP." *Id.* ¶ 22. In her letter, Musick also queried Finucane, "[w]hy does the African-American population have an entire program at Epilepsy foundation when only 1.16% … is diagnosed epileptics?" *Id.* ¶ 23.

Upon discovering Musick's letter, Plaintiff brought the letter to the attention of her direct supervisor, who told Plaintiff to contact Defendant's HR manager, Marsha McIntire. *Id.* ¶¶ 24, 25. Plaintiff complained to Carr, her supervisor, and McIntire that she believed Musck's comments were racially discriminatory.

In the following months, Plaintiff contends that Musick's performance was unsatisfactory. *Id.* ¶ 33. As Musick's supervisor, Plaintiff was scheduled to provide Musick with a performance evaluation around April 22, 2011. *Id.* ¶¶ 34, 35. Plaintiff was told by her direct supervisor that Finucane, Plaintiff's second-level supervisor, had said that "regardless of performance" Musick was "not going anywhere." *Id.* ¶¶ 37, 38. Plaintiff subsequently sent an e-mail to McIntire and Carr complaining that Musick was not performing her job adequately and

that no matter how Plaintiff rated Musick in the upcoming performance review, she had heard that Musick would nevertheless be retained. *See id.* ¶ 40, 41; *see also* Doc. No. 10 Ex. 2.[1]

Four days later, McIntire and Defendant's legal counsel, Patricia Dukes, met with Plaintiff about her e-mail. *Id.* ¶¶ 43, 44. Plaintiff alleges that Dukes told her at that time that if Plaintiff terminated Musick based on poor performance, it would look like Plaintiff was discriminating based on race and that Musick could sue for reverse discrimination. *Id.* ¶ 45. Plaintiff believed that Defendant was engaging in a practice of insulating white employees from discipline and told McIntire and Dukes as much. *Id.* ¶¶ 46, 48. Three days later, on May 3, 2011, Dukes placed Plaintiff on a sixty-day probation.

Subsequently, Plaintiff sent a complaint to Richard Dennes, CEO, regarding these issues. *Id.* ¶ 56. On May 10, 2011, she filed a formal complaint with the Maryland Commission on Human Relations and EEOC. *Id.* ¶ 58. Although Plaintiff does not state any facts in the EEOC complaint related to race-based discrimination or discrimination on the basis of disability, she does state that she believes she "ha[s] been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, regarding discipline based on retaliation." *Id.*; Doc. No. 10 Ex. 2.[2] Plaintiff states that Defendant's legal counsel received notice of her complaint. Am. Compl. ¶ 61. Defendant's legal counsel responded to the EEOC, and the EEOC issued a right to sue letter on May 23, 2011. *Id.* ¶ 64. Plaintiff contends that about one or two weeks later, the CEO, Dukes, and Finucane, Plaintiff's second-level supervisor, reduced Plaintiff's work responsibilities and stripped her of her managerial functions. *Id.* ¶ 68. Plaintiff also states that

---

[1]Because Plaintiff's e-mail to Carr and McIntyre is discussed in Plaintiff's amended Complaint and is integral to her claims, consideration by the Court of this document, which Defendant has attached to its Motion to Dismiss, does not convert Defendant's motion into one for summary judgment. *See White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007).

[2]Because Plaintiff's complaint to the EEOC is integral to the Amended Complaint, consideration by the Court of this document does not convert Defendant's Motion to Dismiss into a Motion for Summary Judgment. *See White*, 528 F. Supp. 2d at 579.

she was reprimanded for making a personnel decision with respect to a subordinate employee. *Id.* ¶ 71.

Subsequently, Plaintiff contends that other employees attempted to build a personnel record against Plaintiff and attempted to close Plaintiff out from business operations, affecting Plaintiff's ability to do her job. *Id.* ¶¶ 74, 75. On August 3, 2011, Plaintiff was fired. *Id.* ¶ 77.

Plaintiff filed suit in this Court on August 18, 2011. Her amended Complaint alleges claims of retaliation in violation of Maryland Human Relations Act ("MHRA") (Count I), 42 U.S.C. § 1981 (Count II), Title VII of the Civil Rights Act of 1964 (Count III), and the Americans with Disabilities Act ("ADA") (Count IV). Defendant seeks dismissal of Plaintiff's amended Complaint on all counts.

**II.     Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal

allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

### III.     Analysis

Plaintiff alleges four causes of action in her amended Complaint: (1) retaliation in violation of the MHRA, Md. Code Ann., State Government Article § 20-606; (2) retaliation in violation of 42 U.S.C. § 1981; (3) retaliation in violation of 42 U.S.C. § 2000e-3 *et seq.*; and (4) retaliation in violation of the ADA, 42 U.S.C. § 12203. Defendant, in its motion, moves to dismiss all of Plaintiff's claims for failure to state a claim under Rule 12(b)(6).

Plaintiff alleges that Defendant retaliated against her when, in response to Plaintiff's April 22 e-mail complaining of Musick's conduct, her April 26 complaints to Defendant's legal counsel and HR manager regarding their decision not to fire Musick, and her May 10 filing of an EEOC charge, Defendant terminated her. Defendant contends that Plaintiff has not established

that the conduct she opposed was an unlawful employment practice by Defendant, as required to sustain her claims under Title VII, Section 1981, the ADA, or the MHRA.

To establish a *prima facie* case for retaliation under any of these statutes, Plaintiff must show that: (1) she engaged in protected activity; (2) an adverse employment action occurred against her; and (3) there is a causal connection between the protected activity and the employment action. *See Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 343-44 (4th Cir. 2006) (courts apply the same standard for analyzing retaliation claims whether brought under Section 1981 or Title VII); *see also Chappell v. S. Md. Hosp.*, 578 A.2d 766 (1990) (because the MHRA tracks the language of Title VII, the same criteria apply in analyzing retaliation claims under either statute); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) (listing same elements in ADA action). The plaintiff's burden in this regard is "not onerous"; it requires only that she prove each element by a preponderance of the evidence. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The Court finds that Plaintiff has adequately made out the second and third prongs of her retaliation claim at this motion to dismiss stage. Plaintiff's employment was terminated, and given the facts alleged by Plaintiff, the Court can infer a causal relationship between Plaintiff's complaints and her termination. However, Plaintiff has not established that her complaints constituted objections against unlawful employment practices such that Plaintiff could be said to have engaged in a protected activity. A plaintiff's complaint to her employer must be about unlawful employment practices that she reasonably believes are unlawful. *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338-39 (4th Cir. 2006). Complaints are not considered protected activities when they fail to make any allegations about discrimination based on a protected characteristic.

*See*, *e.g.*, *Staten v. Maryland Dep't of Labor, Licensing & Regulation*, Civ. No. RDB-07-3409, 2010 WL 1246036, at *4 (4th Cir. Mar. 26, 2010).

With these considerations in mind, the Court will proceed to consider whether each of the three complaints made by Plaintiff—Plaintiff's April 22, 2011 e-mail, statements made by Plaintiff at an April 26, 2011 meeting, and the formal EEOC charge filed on May 10, 2011—constitute complaints opposing a practice made unlawful under Section 1981, Title VII, the MHRA, or the ADA.

    A.    <u>Plaintiff's E-mail to McIntyre and Carr</u>

In Plaintiff's amended Complaint, she alleges that an April 22, 2011 e-mail she sent to her supervisors constituted a protected activity under Title VII (Count III) and the ADA (Count IV).[3] On April 22, 2011, Plaintiff sent an e-mail to McIntire, Defendant's HR manager, and Carr, Plaintiff's direct supervisor. *See* Am. Compl. ¶ 40; *see also* Doc. No. 10 Ex. 2.[4] In this e-mail, Plaintiff states that she is preparing to complete Musick's first performance review and that she has been made aware that Musick is not providing the necessary support to Plaintiff's team members. Plaintiff suggests that she cannot perform a fair and accurate review of Musick if, as she has heard, Musick will not be fired regardless of her substandard performance. Plaintiff also states that she believed Defendant's policy was that even if someone had a disability (referencing Musick's epilepsy) they still must meet performance expectations. Plaintiff then asks for guidance as to how she is supposed to assess Musick's performance in this situation.

---

[3] It is not clear whether Counts I and II rely upon the April 22, 2011 e-mail as constituting a protected activity. To the extent they do, the above analysis applies equally to Counts I and II.

[4] As discussed *supra*, n.1, the Court's consideration of this e-mail which Defendant has attached to its Motion to Dismiss is proper even though was not incorporated by Plaintiff into her amended Complaint, because Plaintiff made frequent reference to the e-mail within her Complaint and it is integral to her claims.

In order for Plaintiff's e-mail to constitute a protected activity, the e-mail must convey that Plaintiff opposes a practice by Defendant of discriminating based on a protected characteristic; in this case, either disability or race. *See*, *e.g.*, *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995). In the instant action, Plaintiff's April 22, 2011 e-mail makes no reference to any discrimination Plaintiff believes she may have suffered on the basis of either race or disability. Although Plaintiff indirectly references Musick's epilepsy in her e-mail, the e-mail cannot reasonably be read as suggesting that Defendant is discriminating with regard to individuals with epilepsy. It bears note that Defendant is an epilepsy foundation.

Rather, Plaintiff's e-mail contains only complaints that Defendant, for whatever reason, had determined not to fire Musick even though Plaintiff (and apparently her team members) considered Musick to be a substandard employee. Accordingly, Plaintiff's e-mail does not constitute the requisite "protected activity" to state a *prima facie* case of retaliation under either the ADA or Title VII, and cannot serve as a basis for either of these claims. *See Barber*, 68 F.3d at 702 (finding plaintiff's complaint to human resources about unfair treatment in general and dissatisfaction that someone else was awarded a certain position insufficient to constitute protected conduct as required for a retaliation claim).

Accordingly, Plaintiff cannot state a claim for retaliation based on her April 22, 2011 e-mail.

      B.      <u>Plaintiff's Meeting with McIntyre and Dukes</u>

On April 26, 2011, Plaintiff met with McIntyr, Defendant's HR manager, and Dukes, Defendant's legal counsel, to discuss Plaintiff's April 22 e-mail. During the meeting, Dukes revealed to Plaintiff her concern that if Plaintiff were to terminate Musick based on poor

performance, it would look like Plaintiff was discriminating based on race and that Musick could sue for reverse discrimination. In response, Plaintiff expressed her opposition to what she felt was Defendant's decision to retain Musick because she is Caucasian.

In Count III of Plaintiff's amended Complaint, she contends that her statements made to McIntyr and Dukes during the meeting were in opposition to Defendant's unlawful employment practices and thus constitute protected activity under Title VII.[5] Title VII provides that:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin … [.]

42 U.S.C. § 2000e-2(a)(1).

In order to bring a retaliation claim under Title VII, the underlying conduct Plaintiff is opposing must be conduct proscribed by this statute. The Court does not see how Defendant's decision to *retain* Musick could possibly constitute an unlawful employment practice, given the definition above. At most, Dukes' statements might have led Plaintiff to reasonably believe that Defendant had a practice of retaining subordinate employees of a different race than their supervisors because of concerns of discrimination and so-called reverse-discrimination suits. Plaintiff seems to contend that Title VII renders unlawful an employer's failure or refusal to discharge an individual "because of such individual's race." Such a reading is inconsistent with the purpose of the statute and would lead to absurd results, as it suggests that an employee, akin to an indentured servant, can only leave her job by being discharged. Plaintiff has not shown that her April 26 statements to Dukes and McIntyre opposed any practice by Defendant of failing or refusing to hire anyone because of their race, or discharging anyone because of their race.

---

[5]Plaintiff discusses her April 26 meeting only in reference to her Title VII claim.

Plaintiff argues that it "the plaintiff in a Title VII retaliation case need only prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring." Doc. No. 13 at 3 (citing *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003)). Plaintiff seems to suggest that her "reasonable belief" applies to the question of whether the practice that she believed Defendant to be engaging in was in fact proscribed by Title VII. The Court disagrees. Title VII protects a Plaintiff who is wrong about the facts but will not protect a Plaintiff mistaken about the law. In other words, Title VII only protects a Plaintiff who is ultimately wrong as to whether Defendant in fact engaged in the unlawful employment practice she reasonably believed it to have engaged in. Title VII does not protect a Plaintiff who reasonably, but wrongly, believes that a certain practice of Defendant is unlawful.

Plaintiff's interpretation of the case law would in effect extend Title VII's protection against retaliation to any conceivable complaint by a plaintiff so long as the plaintiff reasonably believed Defendant's practice to be an unlawful one. This interpretation is not consistent with the purpose of Title VII retaliation claims, which is to protect individuals who report on conduct actually proscribed by the statute. *Cf. Adams v. Giant Food, Inc.*, 225 F. Supp. 2d 600, 605 (D. Md. 2002) (denying plaintiffs' Title VII retaliation claims regarding race-based discrimination where the conduct plaintiffs complained of, favoritism toward a few female employees, did not come within the gambit of race-based discrimination protected by Title VII).

Moreover, even when viewed in a light most favorable to Plaintiff, the Court finds unlikely that Plaintiff could have reasonably believed Dukes' statement to have revealed an unlawful employment practice by Defendant. Certainly, Dukes' statement implicated

race. When considering Dukes' statement as evidence of any greater policy, however, it becomes clear that any such policy or practice based on concerns of discrimination or reverse-discrimination would apply to and affect employees of all races equally. Dukes' concern about firing a subordinate employee where the supervisor is of a different race is more of a concern about race in the work-force generally, and Plaintiff has not suggested that, at the time of her complaint, she reasonably believed that such concerns were being implemented discriminatorily (*i.e.*, that Defendant would not similarly hesitate to have a Caucasian supervisor fire an African-American subordinate employee based on concerns about discrimination suits). Accordingly, the Court finds that Plaintiff's April 26 statements were not protected activities sufficient to state a claim for retaliation under Title VII.

### C.      Plaintiff's EEOC Complaint

On May 10, 2011, Plaintiff filed a formal complaint with the Maryland Commission on Human Relations and EEOC. Her Complaint states the following:

> In early 2011, I hired a subordinate employee to perform administrative functions. This employee was a probationary employee to which I was responsible for conducting her evaluation. During the probationary period, the employee was not meeting the expectations of the position. As a result, I was inclined not to pass her probationary period as satisfactory. Upon conferring with my Supervisor, I was told that the CEO had made the statement, "that regardless of performance, she (the employee) was not going anywhere." Shortly after being informed of this, I wrote an email seeking guidance on how to conduct the performance review. This email was sent to my Supervisor and the Director of Human Resources. Approximately one week later, on April 29, 2011, I was informed that I was being subjected to disciplinary action for poor performance as a Manager. This action was a direct result of the email I sent in which I stated what I was told with respect to the evaluation of the probationary employee's performance. Despite my objection, I was placed on a 60 day probation.

Doc. No. 10 Ex. 3 at 1. Plaintiff then states that she believes she has "been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, regarding discipline based on retaliation."

Plaintiff's claims under the MHRA, Section 1981, Title VII, and the ADA are premised on this EEOC complaint. However, Plaintiff's complaint contains only the bare contention that she believes Title VII has been violated, without any allegations whatsoever of discrimination based on a protected characteristic. Her complaint is thus insufficient to constitute a protected activity. *See Barber*, 68 F.3d at 702 ("[a] general complaint of unfair treatment does not translate into a charge of illegal [] discrimination."); *see also Staten*, 2010 WL 1246036, at *4; *Balzas v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994). Plaintiff could not have had a reasonable belief that she was opposing any employment practice proscribed by Title VII, the MHRA, Section 1981, or the ADA where she alleged no conduct rendered unlawful by those statutes.

Accordingly, Plaintiff has failed to state a claim for retaliation under any of the state or federal statutes upon which she relies, and Plaintiff's amended Complaint is accordingly dismissed.

### D.  Plaintiff's Intention to File a Second Amended Complaint

In Plaintiff's response to Defendant's Motion to Dismiss, Plaintiff advises the Court that she is planning on filing a Motion for Leave to file a Second Amended Complaint so that she may add a cause of action under Maryland common law for termination in violation of public policy. The Court finds that such an amendment would be futile based on the insufficiency of the facts alleged in Plaintiff's Complaint and amended Complaint to state a cognizable cause of action.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's amended Complaint will be granted, and Defendant's original motion to dismiss will be denied as moot. A separate Order will follow.

  March 9, 2012                                                    /s/
      Date                                                         Alexander Williams, Jr.
                                                                 United States District Judge